## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 43688

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Unpublished Opinion No. 460** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: May 9, 2017** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ANDREW SCOTT GOMEZ,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant. Kimberly A. Coster argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

_____

GUTIERREZ, Judge

Andrew Scott Gomez appeals from his judgment of conviction after a jury found him guilty of possession of a controlled substance and possession of drug paraphernalia. Gomez makes three arguments on appeal. First, he contends the district court erred in admitting evidence of marijuana contained in a backpack found in the vehicle. Second, he argues the district court erred by failing to give a unanimity instruction for the possession of methamphetamine charge. Last, Gomez argues the State did not present sufficient evidence to prove its theory of constructive possession of methamphetamine. For the reasons set forth below, we affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

At 2:30 a.m., officers observed a vehicle parked in a darkened and secluded portion of a commercial parking lot. As one of the officers approached the vehicle, he noticed two individuals inside--Gomez sat in the driver's seat, and a woman, later identified as Jennifer Thompson, sat in the passenger seat. The officer questioned the individuals about what they were doing in the parked vehicle. Both individuals appeared nervous and gave inconsistent answers about what they were doing, where they had been, and where they were going. After receiving conflicting stories, the officer became suspicious and requested that dispatch send a drug dog to the scene. Upon arrival, the drug dog alerted positively to the vehicle, prompting the officers to search the vehicle for illegal substances.

The officers' search of the vehicle revealed baggies of methamphetamine in a makeup bag on the passenger floor and in an eyeglass case in Thompson's bra, a digital scale, loose oxycodone pills, and a backpack containing marijuana. Gomez admitted to police that he had agreed to transport Thompson in the vehicle in exchange for some methamphetamine. Following Gomez's arrest, he also admitted that he had a pipe in his underwear and that he had smoked methamphetamine earlier in the day. Forensic analysis later revealed that the pipe contained residue that tested positive as methamphetamine.

The State charged Gomez with possession of a controlled substance, Idaho Code § 37-2732(c), and possession of drug paraphernalia, I.C. § 37-2734A. The State also charged Gomez with a persistent violator enhancement, I.C. § 19-2514. Prior to trial, the State provided notice of its intent to introduce Idaho Rule of Evidence 404(b) evidence of the marijuana contained in the backpack found in Gomez's truck as well as Gomez's statements pertaining to that evidence. The district court ultimately concluded that the evidence was admissible, stating:

> The issue of course is possession. It is all part of the same act, same scene, and it is relevant and admissible. And I don't think any prejudicial effect outweighs its probative value. I think it is part of the entire picture in this case. It is relevant to the issues brought before the jury.

The case proceeded to trial. During both opening and closing statements, the State argued that the jury could convict Gomez of possession based on three separate theories: (1) Gomez's admission that he smoked methamphetamine earlier in the day; (2) Gomez's

2

conduct of transporting Thompson and her drugs in exchange for a portion of those drugs; or (3) Gomez's actual possession of a pipe containing methamphetamine residue.

The jury found Gomez guilty of both possession of a controlled substance and possession of paraphernalia, with a persistent violator enhancement. The district court sentenced Gomez to a unified term of ten years, with two years determinate, on the possession of a controlled substance charge and a concurrent sentence of six months on the possession of paraphernalia charge. Gomez filed a motion for reconsideration, which the district court denied. Gomez now timely appeals his judgment of conviction on the possession of a controlled substance charge.

## II.

## ANALYSIS

Gomez raises three issues on appeal. We first address Gomez's argument that the district court erred in admitting evidence of the marijuana contained in the backpack. We next address whether the court committed fundamental error by failing to give a unanimity instruction to the jury that would have required the jury to identify the specific act of possession upon which it based its verdict. Finally, we consider Gomez's argument that the State did not present sufficient evidence to prove beyond a reasonable doubt that Gomez had constructive possession of Thompson's methamphetamine.

### A.      Evidence of Marijuana in Backpack

We first turn to Gomez's argument that the district court erred when it admitted evidence of marijuana contained in the backpack discovered in the trunk of the vehicle. Gomez challenges the court's determination of admissibility pursuant to Idaho Rule of Evidence 404(b). He argues the evidence was improper character evidence relevant for no purpose other than to show criminal propensity. When a trial court's admission of evidence pursuant to I.R.E. 404(b) is challenged on appeal, this Court applies a two-part standard in reviewing claims of error. *State v. Ehrlick*, 158 Idaho 900, 913, 354 P.3d 462, 475 (2015). First, we freely review whether the evidence is relevant to an issue other than the defendant's character or criminal propensity. *Id.* Second, we review the district court's balancing of the probative value and prejudicial danger pursuant to I.R.E. 403 for an abuse of discretion. *Ehrlick*, 158 Idaho at 913, 354 P.3d at 475.

As a preliminary matter, the State contends Gomez has failed to challenge the basis actually relied upon by the district court. The State suggests the district court admitted the evidence pursuant to the doctrine of *res gestae*, not pursuant to I.R.E. 404(b). Thus, the State

3

argues Gomez has not met his burden of demonstrating error. However, not only did the State present the evidence as a Rule 404(b) issue below, but the district court's reasoning reflects its consideration of the evidence pursuant to Rule 404(b). As required under Rule 404(b), the court considered the relevancy of the evidence and balanced the probative value against the prejudicial effect. Moreover, the State's reliance on admissibility pursuant to the *res gestae* doctrine conflicts with existing precedent.

The Idaho Supreme Court recently held that the doctrine of *res gestae* may no longer be relied upon in lieu of determining conformance with the Idaho Rules of Evidence. *See State v. Kralovec*, ___ Idaho ___, ___, 388 P.3d 583, 588 (2017) (holding that "evidence previously considered admissible as *res gestae* is only admissible if it meets the criteria established by the Idaho Rules of Evidence"). Thus, even if we were to assume that the court admitted the evidence pursuant to *res gestae*, we must still review whether the evidence was relevant to an issue other than to show criminal propensity, as required by Rule 404(b).

Idaho Rule of Evidence 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). Of course, evidence of another crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

In this case, we disagree with the court's determination that the evidence was relevant for a purpose other than to show criminal propensity. First, the State did not rely on the marijuana contained in the backpack to support charging Gomez with possession of methamphetamine or paraphernalia. Second, during trial, the State's theory of Gomez's constructive possession of Thompson's methamphetamine was premised upon their joint arrangement that Gomez would

4

transport Thompson in exchange for methamphetamine. In establishing the facts of this arrangement, the State presented evidence that Gomez drove Thompson to a fast-food restaurant to pick up some of her belongings--one of those items being a backpack that she put into the trunk of Gomez's vehicle. However, the State presented no evidence at trial as to why the contents of the backpack were significant to the transportation arrangement between Gomez and Thompson. We can assign no relevancy to the fact that the backpack contained marijuana specifically, as opposed to clothing or other personal belongings. Finally, we cannot contemplate any other permissible purpose under I.R.E. 404(b) for which the evidence of marijuana would have been relevant. Thus, we conclude that the evidence of the marijuana was inadmissible as improper character evidence that was relevant only to show Gomez's criminal propensity.

The State argues that even if the court erred by admitting the evidence of marijuana, the error was harmless. Error is not reversible unless it is prejudicial. Idaho Criminal Rule 52; *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). The State bears the burden of proving harmless error. *State v. Perry*, 150 Idaho 209, 225, 245 P.3d 961, 977 (2010). To meet this burden, the State must show beyond a reasonable doubt that the error did not affect the outcome of the case. *Id.*

In support of its argument, the State points to the overwhelming evidence presented during trial indicating Gomez was guilty of possessing methamphetamine. The State maintains that evidence that Gomez was also transporting marijuana would not have affected the jury's guilty verdict on the methamphetamine possession charge. To establish guilt on the possession of methamphetamine charge, the State was required to prove that Gomez knowingly possessed methamphetamine; i.e., that he had knowledge of the presence of the drug. *See* I.C. 37-2732(c); *State v. Armstrong*, 142 Idaho 62, 64, 122 P.3d 321, 323 (2005). The requisite knowledge of the presence of a controlled substance may be proved by direct evidence or may be inferred from the circumstances. *State v. Blake*, 133 Idaho 237, 242, 985 P.2d 117, 122 (1999).

The record indicates that after his arrest, Gomez admitted to officers that Gomez had smoked methamphetamine earlier in the evening. Gomez also told officers that Gomez had a pipe hidden in his underwear. After officers retrieved the pipe from deep within Gomez's

5

underwear, Gomez admitted that the pipe had been smoked out of previously.[1]  The officer testified during trial to observing a white residue on the inside of the pipe, which was consistent with methamphetamine burning.  During trial, a forensic expert testified that she also was able to observe a small amount of residue in the pipe and, upon forensic analysis, that residue tested positive as being methamphetamine.

Based upon the cumulative evidence presented by the State during trial, there was overwhelming evidence that Gomez had knowledge that the residue within the pipe was methamphetamine and that by admitting to possession of the pipe, Gomez also admitted to possessing the methamphetamine within the pipe.  Thus, we are persuaded that because the evidence of guilt was so overwhelming, any error in the admission of the marijuana evidence was harmless beyond a reasonable doubt.

**B.      Unanimity Instruction**

Gomez next contends the trial court erred when it failed to give a unanimity instruction regarding the charge of possession of methamphetamine.  Whether the jury has been properly instructed is a question of law over which we exercise free review.  *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009).  When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law.  *State v. Bowman*, 124 Idaho 936, 942, 866 P.2d 193, 199 (Ct. App. 1993).

Idaho law requires trial courts to instruct the jury that it must unanimously agree on the defendant's guilt.  IDAHO CONST. art. I, § 7; I.C. §§ 19-2316; and 19-2317; *Severson*, 147 Idaho at 711, 215 P.3d at 431.  As a general rule, however, the trial court is not required to instruct the jury that it must unanimously agree on the facts giving rise to the offense.  *State v. Adamcik*, 152 Idaho 445, 474, 272 P.3d 417, 446 (2012).  Requiring unanimous factual findings would ignore that different jurors may be persuaded by different pieces of evidence, even though they agree upon the bottom line.  *State v. Southwick*, 158 Idaho 173, 181, 345 P.3d 232, 240 (Ct. App.

---

[1]      Audio recording of search incident to arrest at police station, starting at 35:35:

| | |
|---|---|
| Officer: | It's clean as a whistle, where'd you . . . . |
| Gomez: | Cuz I haven't had (inaudible) |
| Officer: | Ah, you've smoked out of it before. |
| Gomez: | It's been smoked out of, yeah |
| Officer: | Yeah |
| Gomez: | In the past. |

2014). In cases involving alternative means of meeting statutory elements, the jury need only agree on the bottom line. *Id.*

An exception to this general rule applies where there is a genuine possibility that a conviction may occur as a result of different jurors concluding that the defendant committed different criminal acts. *Id.* This occurs when the State presents evidence that the defendant has committed several temporally discrete acts, each of which would independently support a conviction for the crime charged. *Id.* In such a situation, the trial court should instruct the jury that it must unanimously agree on the specific incident constituting the offense, regardless of whether the defendant requests such an instruction; or, alternatively, the State must elect the act upon which it will rely for the conviction. *State v. Gain*, 140 Idaho 170, 172-73, 90 P.3d 920, 922-23 (Ct. App. 2004). Here, there was no such instruction given or election made.

Gomez contends that although the State only charged Gomez with one count of possession of methamphetamine, which did not specify the acts upon which the State was relying, the State improperly introduced three separate and distinct acts of possession during trial to prove its case. During opening and closing statements, the State argued that the jury could convict Gomez of possession based upon the following three theories: (1) his admission that he smoked methamphetamine earlier in the day; (2) his conduct of transporting Thompson and her drugs in exchange for a portion of the drugs found on her person or in her makeup bag; or (3) Gomez's actual possession of a pipe containing methamphetamine residue. Then, during trial, the State focused its presentation of evidence on the methamphetamine found as a result of the officers' investigation of the vehicle--the second and third theories.

Gomez raises his claim of instructional error for the first time on appeal. Ordinarily, a party may not claim that a jury instruction was erroneous unless the party objected to the instruction prior to the start of jury deliberations. I.C.R. 30(b). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *Perry*, the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or

obvious without the need for reference to any additional information not contained in the appellate record, including information about whether the failure to object was a tactical decision; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

Gomez maintains that any one of the three theories argued by the State could support a conviction for possession of methamphetamine. Thus, Gomez argues the jury should have been instructed that it must unanimously agree on the specific act constituting the charged offense and the omission of such instruction constitutes fundamental error. We focus our examination of error upon the factual basis for the theories of possession advanced by the State to determine whether they constitute multiple acts, as argued by Gomez, or alternative theories, as argued by the State.

### 1.      Possession of methamphetamine found after investigation of Gomez's vehicle

We first examine the State's second and third theories of guilt--essentially, those that stem from the physical discovery of methamphetamine after officers investigated the vehicle. During trial, the State alleged that Gomez was in actual possession of methamphetamine based upon the residue found in the pipe located on Gomez's person. The State also alleged Gomez had constructive possession of methamphetamine based upon the drugs found on Thompson's person or in her makeup bag. The State maintains that its theories of actual possession and constructive possession are simply alternative factual means by which the element of possession could be proved, but they do not constitute multiple criminal acts of possession such to necessitate a unanimity instruction.

In *Schad v. Arizona*, 501 U.S. 624 (1991), the United States Supreme Court addressed the issue of whether due process requires jury unanimity on a particular theory of a charged crime. The Court stated: "We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission," because "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line." *Id.* at 631-32 (internal quotation marks and citation omitted). The Court concluded, "Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Id.* at 632 (citation omitted). In concurrence, Justice Scalia observed that "it has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission." *Id.* at 649 (J. Scalia, concurring).

If the State's allegations establish alternative theories of a single criminal offense, then no unanimity instruction was required. On the other hand, if the State's allegations establish multiple offenses, then Gomez was entitled to a unanimity instruction. Determining whether the State's allegations constitute a single offense or multiple offenses requires an inquiry into the circumstances of the conduct and consideration of the intent and objective of the actor. *State v. Bush*, 131 Idaho 22, 33-34, 951 P.2d 1249, 1260-61 (1997). To establish multiple offenses, there must be "a distinct union of *mens rea* and *actus reus* separated by a discrete period of time and circumstance from any other such similar incident" for each of the alleged acts of possession. *Miller v. State*, 135 Idaho 261, 268, 16 P.3d 937, 944 (Ct. App. 2000).

We have previously addressed whether the State's prosecution of a single count of possession of a controlled substance required a unanimity instruction where the State based its prosecution on two alternative factual grounds to establish the defendant's knowledge and control of a substance. *See Southwick*, 158 Idaho 173, 345 P.3d 232. In *Southwick*, officers discovered methamphetamine in two locations in the defendant's vehicle after pulling over the defendant and her passenger. *Id.* at 177, 345 P.3d at 236. The State charged the defendant with a single count of possession of a controlled substance based upon alternative theories that she possessed the substance based upon (1) her knowledge and control of methamphetamine residue found on a scale located between two seats in the vehicle or (2) her knowledge and control of methamphetamine crystals located in a baggie inside the passenger door compartment of the vehicle. *Id.* at 182, 345 P.3d at 241. On appeal, the defendant argued she was entitled to a unanimity instruction because the two theories constituted separate and distinct criminal acts. *Id.* We considered the fact that the substances were discovered in different locations within the vehicle, but deemed that fact nondispositive. *Id.* Ultimately, after considering all of the circumstances as well as the defendant's apparent intent and objective, we held that the acts were not separate and distinct, but rather alternative factual theories for proving possession. *Id.* Because the jury could agree on the "bottom line" that the defendant possessed a controlled substance at a single time and in a single location, we concluded that a specific unanimity instruction was not required. *Id.*

The California Court of Appeals addressed a similar issue in *People v. Ortiz*, 145 Cal. Rptr. 3d 907 (Cal. Ct. App. 2012). In *Ortiz*, the state charged the defendant with possession of a firearm by a felon and carrying a firearm in a vehicle, as well as related enhancements to those

charges. *Id.* at 925. During trial, the jury heard conflicting evidence as to whether the defendant actually possessed a gun, actually possessed a Taser, constructively possessed someone else's gun, or constructively possessed someone else's Taser. *Id.* On appeal, the defendant argued that the trial court should have given an instruction requiring the jury to unanimously agree on the specific acts constituting the crimes. *Id.* at 926. The court disagreed, concluding the state had merely advanced multiple theories of a single discrete crime and not multiple acts constituting multiple crimes. *Id.* The court reasoned that even if the jurors did not unanimously agree as to exactly what the defendant did to commit the crime--whether he actually or constructively possessed a firearm--such unanimous agreement of the underlying facts was not required. *Id.* *See also People v. Russo*, 25 P.3d 641, 645 (Cal. 2001) (holding that "where the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed . . . the jury need not unanimously agree on the basis or, as the cases often put it, the 'theory' whereby the defendant is guilty").

Here, we are persuaded by the State's argument that its theories of actual possession and constructive possession do not constitute multiple discrete crimes or acts of possession, but rather multiple theories of a single discrete crime of possession. Similar to *Southwick*, Gomez was charged with a single count of possessing a controlled substance on a single date and in a single location. The criminal complaint did not specify the means by which that possession occurred. During trial, the State alleged alternative factual grounds from which the jury could conclude that Gomez was guilty of the single discrete crime of possession of methamphetamine on that date and in that location. Just as it was not dispositive in *Southwick* that the methamphetamine was found in different locations within the vehicle, it is also not dispositive that the methamphetamine in this case was found in multiple locations inside the vehicle and on Gomez's person. Examining Gomez's apparent intent to transport Thompson in exchange for methamphetamine, it is reasonable to infer that his objective was possession of methamphetamine. Therefore, we conclude that the State's allegations of actual and constructive possession constitute alternative theories upon which it relied in proving the single crime of possession charged. Similar to *Ortiz*, the jurors did not need to unanimously agree on the theory upon which they based their finding of guilt. Thus, Gomez was not entitled to a unanimity instruction based upon these acts. Gomez has not met his burden of demonstrating a constitutional violation on the basis of the State's presentation of these two theories to the jury.

10

## 2.      Admission to smoking methamphetamine earlier in the day

We next turn to the State's theory that Gomez was guilty of possession based upon his admission to smoking methamphetamine earlier in the day. The State concedes that they improperly introduced a separate act of possession by making this assertion. The State acknowledges that, based on this error, Gomez was entitled to a unanimity instruction even though none was provided. We accept the State's concession; the State's error violated Gomez's unwaived constitutional rights. We must, therefore, consider whether Gomez has met his burden under the remaining two prongs of *Perry*.

Regarding the second prong of *Perry*, Gomez carries the burden of showing that the error was clear or obvious from the record. To meet this standard, there must be no question as to whether the failure to object was a tactical decision. *Perry*, 150 Idaho at 228, 245 P.3d at 980. The State speculates that Gomez's failure to request a specific unanimity instruction could have been a tactical decision. Specifically, the State suggests that even though Gomez was entitled to a remedy because of the State's error, defense counsel chose to forego requesting a specific limiting instruction, instead opting to cure the error himself during closing arguments. The State points to the following statements by defense counsel:

> Now, there is no question that Andrew Gomez was a user of methamphetamine. In fact, again as [the State] pointed out per his own admission they had smoked a bowl earlier in the evening. He was a user. No question.
> In getting back to the elements again. Was he knowingly in possession of methamphetamine when he smoked that bowl? Of course. You can't smoke a bowl of methamphetamine and not know you possess it.
> The problem is he is not being charged with being a user. And he is not being charged with what he did earlier in the evening. He is being charged with knowingly . . . possessing methamphetamine at the time of his arrest when they show up at the scene at the car.

The State submits these statements show that defense counsel attempted to cure the error by taking the State's "use" theory "off the table."

Gomez counters that such speculation is absurd, as it would rely upon numerous unreasonable assumptions of counsel. First, defense counsel would have had to believe that he could dictate the acts upon which the State could rely in proving its case simply by arguing in opposition to the State during closing argument. Second, defense counsel would have had to believe that the jury would ignore the court's instruction to not consider either attorney's argument as evidence. Third, defense counsel would have had to believe that the jury would

11

believe his argument over that of the State. Finally, even if counsel held any of the erroneous beliefs proffered by the State, Gomez contends there was no possibility that counsel could gain any tactical advantage by failing to object.

We have previously held that the State's mere speculation that counsel may have made a tactical decision not to object is insufficient to introduce ambiguity into the record. *See State v. Sutton*, 151 Idaho 161, 166-67, 254 P.3d 62, 67-68 (Ct. App. 2011). In *Sutton*, the record contained no indication of counsel's knowledge of a defective instruction and likewise contained no indication that counsel's failure to object was intentional. *Id.* However, on appeal, the State speculated that counsel failed to object in the hope that if Sutton was convicted, the erroneous instruction would provide a basis for a new trial. *Id.* We rejected the State's argument, determining that there was no indication in the record that Sutton knew more about the law than the State or the trial court, and there was no evidence that Sutton was attempting to sandbag the court. *Id.* Because the only indicia that Sutton's failure to object was a tactical decision came from the State's speculation, we concluded that information outside the record was not necessary to determine that the error was not a tactical decision. *Id.* at 167, 254 P.3d at 68.

Conversely, where information in the record suggests that a failure to object might have been a reasonable tactical decision, we will be unable to ascertain whether the error is clear or obvious without consideration of additional information outside the record. *See State v. Grove*, 151 Idaho 483, 491, 259 P.3d 629, 637 (Ct. App. 2011). In *Grove*, we determined that counsel's failure to object to damaging testimonial evidence could have been a viable trial strategy in a situation where objecting might have prompted the State to call an additional adverse witness. *Id.* We reasoned that because it would have been reasonable for defense counsel to allow the testimony, it was unclear from the record whether counsel's failure to object was a tactical decision. *Id.*

In this case, we are not persuaded that information outside the record is necessary to ascertain whether defense counsel's failure to object was a tactical decision. First, the statements made by defense counsel during closing arguments do not rise to the level of implicating a tactical decision. Even accepting the State's speculation that defense counsel was attempting to negate the State's "use theory," defense counsel's argument did not suggest his recognition that a unanimity instruction was required; nor did his argument indicate a conscious decision to forego objecting. Moreover, unlike *Grove*, where the defendant's failure to object could have given the

defendant a strategic advantage, we recognize no potential advantage to not obtaining a unanimity instruction in Gomez's case. Not only could defense counsel not have cured the State's error through argument, but Gomez also gained no advantage by failing to object. Similar to *Sutton*, we are left with nothing more than the State's speculation that Gomez failed to object to the absence of a unanimity instruction in the hopes of gaining a tactical advantage by curing the error himself. Such speculation is not sufficient to introduce ambiguity into the record. Thus, we conclude that additional information outside the record is not necessary to determine that Gomez's failure to object was not a tactical decision. Gomez has satisfied the second prong of *Perry*.

Finally, regarding the third prong of *Perry*, Gomez has the burden of demonstrating that the error affected his substantial rights. *See Perry*, 150 Idaho at 226, 245 P.3d at 978. This means he must demonstrate a reasonable probability that the error affected the outcome of the trial. *See id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

In his briefing, Gomez focuses his prejudice argument on the State's theories of actual possession and constructive possession. As discussed earlier, Gomez was not entitled to a unanimity instruction based upon these alternative theories. Thus, Gomez cannot establish prejudice on the basis that (1) he had to defend against those two theories or (2) there was insufficient evidence to support one of those two theories.

Gomez also makes a general assertion that "the jury could have reached a guilty verdict while disagreeing on the specific act of possession." Gomez provides no facts suggesting the jury was confused or divided as to which act constituted the grounds for its conviction. Such a blanket statement unsupported by specific argument or evidence from the record is insufficient to establish a reasonable probability that he was prejudiced. *See Severson*, 147 Idaho at 710, 215 P.3d at 430 (holding defendant did not show prejudice where he failed to present any facts or arguments to support conclusion that specific error resulted in prejudice). Moreover, existing precedent contradicts any notion that a court's failure to give a unanimity instruction is inherently prejudicial. *See State v. Montoya*, 140 Idaho 160, 168, 90 P.3d 910, 918 (Ct. App. 2004) (finding absence of unanimity instruction not prejudicial where evidence presented was sufficient to support finding of guilt as to any of the acts); *Miller*, 135 Idaho at 268, 16 P.3d at 944 (same). Therefore, we conclude that Gomez has not met his burden of showing that he was

13

prejudiced by the district court's failure to give a unanimity instruction. Gomez has not established fundamental error.

## C.     Sufficiency of the Evidence

Finally, we turn to Gomez's contention that the State did not present sufficient evidence to prove beyond a reasonable doubt that Gomez had constructive possession of Thompson's methamphetamine. Based upon our analysis above, concluding that the State's allegations of actual and constructive possession constitute alternative factual grounds as to how Gomez committed a single crime, we need not address Gomez's contentions regarding sufficiency of the evidence.

In *Southwick*, we considered whether a reversal of a defendant's conviction was required where one of the alternative factual grounds alleged by the State was not supported by sufficient evidence. *Southwick*, 158 Idaho at 182, 345 P.3d at 241. We held that where the jury is instructed on "alternative underlying factual means of meeting [an] element . . . one reasonable and the other unreasonable, we will assume, absent a contrary indication in the record, that the jury based its verdict on the reasonable ground that is supported by sufficient evidence." *Id.* at 183, 345 P.3d at 242.

Here, Gomez limits his assignment of error to the insufficiency of the State's evidence supporting its theory of constructive possession. However, Gomez points to no indication in the record that the jury based its verdict exclusively on the purported unreasonable basis. Significantly, because Gomez does not challenge the sufficiency of evidence regarding the State's theory of actual possession, we can presume that the State's evidence was sufficient. *See State v. McIntosh*, 160 Idaho 1, 7, 368 P.3d 621, 627 (2016) (holding that "we will not search the record for error and that errors not assigned with particularity will not be addressed"). Thus, even if we are to assume insufficient evidence of constructive possession, we are justified in presuming that the jury based its verdict on the actual possession theory, which Gomez does not challenge as unreasonable or unsupported. Therefore, Gomez has failed to establish that the jury based its verdict on anything other than reasonable and factually supported allegations of actual possession.

## III.

## CONCLUSION

The district court erred in admitting evidence of the backpack containing marijuana; however, the error was harmless. The district court also erred by not giving a unanimity instruction as to the State's theory of possession based on Gomez's admission to smoking methamphetamine earlier in the day; however, Gomez has failed to show that he was prejudiced by the error. Finally, we need not address Gomez's contention that there was insufficient evidence to support the State's constructive possession theory, as Gomez does not challenge the sufficiency of evidence supporting the State's alternative theory of actual possession. Accordingly we affirm Gomez's judgment of conviction for possession of a controlled substance, with a persistent violator enhancement.

Judge MELANSON and Judge HUSKEY **CONCUR**.