911 P.2d 145

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Creston G. DOWNING, Defendant–Appellant.**

**No. 21387.**

Court of Appeals of Idaho.

Feb. 12, 1996.

Gregory Fitzmaurice, Grangeville, for appellant.

Alan G. Lance, Attorney General; L. LaMont Anderson, Deputy Attorney General, argued, Boise, for respondent.

LANSING, Judge.

Creston G. Downing is appealing his judgment of conviction and sentence after a jury

found him guilty of lewd conduct with a minor. Downing asserts that the trial court erroneously refused to allow Downing to cross-examine the victim, who was fifteen years old at the time of trial, about false accusations of physical and sexual abuse that she allegedly made when she was approximately six years old. We find Downing's argument, based upon I.R.E. 608 and the Sixth Amendment's confrontation clause, to be without merit. Accordingly, we affirm.

## BACKGROUND

Downing was charged with lewd conduct with a minor child under sixteen, I.C. § 18–1508, based upon a report of misconduct with his daughter, E.D., who was twelve years old at the time of the offense. E.D. testified at trial that, while she and Downing were on a camping trip in late 1991, Downing engaged in both manual-genital contact and intercourse with her. About eighteen months afterward, E.D. disclosed the incident to a school counselor, and Downing was later arrested. When interviewed by the police, Downing admitted that he had inserted his finger in E.D.'s vagina when he and E.D." were camping. He said, however, that he had done so at E.D.'s request to determine if she was a virgin and that the contact was not sexually motivated.

At trial Downing sought to impeach the credibility of E.D., who was then fifteen years old, by questioning her about five specific instances in which he claimed E.D. had falsely accused him and others of misconduct, including: (1) accusations that her mother participated in a satanic rituals cult; (2) an earlier sexual abuse allegation against Downing; (3) sexual abuse accusations against a judge and an attorney during a child custody dispute between Downing and his ex-wife; (4) an allegation that E.D.'s mother struck her with a board; and (5) an accusation made against medical personnel for touching E.D.'s stomach during a physical exam. The district court ruled that, because E.D. had allegedly restated her accusations of her mother's satanic cult involvement as recently as 1992, Downing could ask E.D. on cross-examination whether she had ever made any false accusations of cult activity. The court deter-

mined, however, that the remaining allegations, reportedly made in 1985 when E.D. was about six years of age, were too remote to have probative value. Downing therefore was not allowed to cross-examine E.D. about any of the alleged false accusations except the one pertaining to satanic cult activity.

The jury found Downing guilty of lewd conduct with a minor, and the court imposed a unified fifteen-year sentence with a six-year minimum term of incarceration. Downing appeals, presenting two issues for our consideration: (1) whether the district court violated I.R.E. 608(b) and Downing's constitutional right to confront witnesses by preventing Downing from cross-examining the victim about her alleged prior false allegations; and (2) whether Downing's sentence is excessive.

## ANALYSIS

### A. I.R.E. 608(b)

■ Downing contends that E.D.'s alleged history of making false accusations of physical and sexual abuse against Downing and others when she was age six or seven is probative of her disposition for untruthfulness and thus would have helped the jury accurately determine E.D.'s credibility.

■ Idaho Rule of Evidence 608(b) controls the admissibility of evidence of specific instances of a witness's conduct for the purpose of challenging the witness's credibility. It provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting the credibility, of the witness, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning (1) the character of the witness for truthfulness or untruthfulness, or (2) the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Whether to admit under this rule evidence that is proffered by cross-examination lies within the discretion of the trial court. *State v. Araiza,* 124 Idaho 82, 90–91, 856 P.2d 872, 880–881 (1993). In determining whether the trial court abused its discretion by disallowing or limiting such cross-examination, we apply the three-part analysis articulated in *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). *See Araiza,* 124 Idaho at 91, 856 P.2d at 881. This analysis focuses upon whether the trial court correctly perceived the issue as one of discretion, whether the trial court acted within the bounds of that discretion and consistently with applicable legal standards, and whether the trial court's decision was founded on and guided by an exercise of judicial reasoning. *Hedger,* 115 Idaho at 600, 768 P.2d at 1333. In the case before us, the trial court explained its reason for prohibiting cross-examination of E.D. about past accusations:

> "[W]e are trying to test the truthfulness of this witness as she testifies here today. Statements made by a six-year-old I think are not probative of what a 15–year–old— whether a 15–year–old is telling the truth. The statements about the cult activity because they are closer in time, I think are more probative of whether this witness is truthful or not and you can inquire as to those."

The trial court recognized that a discretionary issue was presented and reached its decision through an exercise of reason. Therefore, our inquiry focuses primarily on whether the trial court acted consistently with governing legal standards.

■ The trial court concluded that the alleged incidents of childhood fabrications, which occurred eight or nine years prior to the trial, were too remote to give probative support to Downing's contention that E.D. is a untruthful witness. This analysis was an appropriate application of governing law. We have observed that:

> As evidence goes back further in time— that is, becomes more remote—it is entitled to decreasing weight. At some point it becomes so remote that it no longer tends to make a fact "of consequence ... more probable or less probable" and,

therefore, is inadmissible because it is not relevant under Idaho Rule of Evidence 401.

*Roeh v. Roeh,* 113 Idaho 557, 559, 746 P.2d 1016, 1018 (Ct.App.1987). The determination of remoteness rests within the sound discretion of the trial court. *Blankenship v. Brookshier,* 91 Idaho 317, 322, 420 P.2d 800, 805 (1966); *Evans v. Park,* 112 Idaho 400, 402, 732 P.2d 369, 371 (Ct.App.1987).

We find no fault with the trial court's determination that early childhood falsehoods are irrelevant to the character for truthfulness or untruthfulness of a witness who is now an adolescent. Manifestly, the maturation that occurs between the ages of six and fifteen carries changes in understanding and perception, changes in the ability to distinguish fact from fiction, and changes in "character." In the exercise of its discretion the trial court could properly conclude that the alleged false accusations when E.D. was six or seven would have added nothing of probative value to the case. We therefore hold that the district court did not abuse its discretion in prohibiting Downing from cross-examining E.D. about such remote events.

### B. Sixth Amendment Right to Confront Witnesses

■ Downing next asserts that even if the district court's ruling was proper under Rule 608(b), the limitations placed upon Downing's cross-examination of E.D. infringed his constitutional right to confront witnesses. He argues in essence that, under the Sixth Amendment to the United States Constitution, he had an absolute right to cross-examine E.D. with respect to her prior allegedly false accusations.

■ We find Downing's argument to be contrary to well-established authority. Although a criminal defendant's constitutional right of confrontation includes the opportunity to mount a vigorous attack upon the credibility of witnesses against him, *see generally Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the right to confront adverse witnesses is not absolute. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not

cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (emphasis in original). *See also Araiza*, 124 Idaho at 91, 856 P.2d at 881. Trial courts retain wide latitude to impose limits on cross-examination that is harassing, confusing, repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986); *United States v. Bartlett*, 856 F.2d 1071, 1087–89 (8th Cir.1988); *Hughes v. Raines*, 641 F.2d 790, 792 (9th Cir.1981); *Araiza*, 124 Idaho at 91, 856 P.2d at 881.

As explained above, E.D.'s deceit as a six-year-old child is of little or no relevance to her character for truthfulness at age fifteen. Moreover, Downing was not barred from presenting evidence that attacked E.D.'s credibility. He was permitted to cross-examine E.D. about her more recent alleged accusations that her mother participated in a satanic cult, and a number of defense witnesses, including E.D.'s mother, step-mother and paternal grandfather, testified that E.D. was not a truthful person. We conclude that Downing's constitutional right to confront witnesses was not violated by the disallowance of cross-examination about false statements allegedly made by E.D. in 1985.

## C. Sentence

■ Downing argues that a six-year minimum term is unreasonably harsh under the circumstances of this case, because Downing has a substantial work history, strong family ties and no prior criminal record. He asserts that his record reveals nothing to indicate that he poses any threat to society at large and that, because the victim is an adolescent rather than a young child, incarceration is not required to protect her from further sexual abuse.

■ When a sentence is challenged on appeal, we examine the record, focusing upon the nature of the offense and the character of the offender, to determine if there has been an abuse of the sentencing court's discretion. *State v. Young*, 119 Idaho 510, 808 P.2d 429 (Ct.App.1991). The defendant bears the burden to show that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). An abuse of discretion will be found only if, in light of the governing criteria, the sentence is excessive under any reasonable view of the facts. *State v. Charboneau*, 124 Idaho 497, 500, 861 P.2d 67, 70 (1993). Where reasonable minds might differ as to the length of the sentence, we will not substitute our view for that of the district court. *Brown*, 121 Idaho at 393, 825 P.2d at 490; *State v. Admyers*, 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App.1992). For purposes of appellate review, we consider the minimum period of confinement as the probable duration of incarceration. *State v. Sanchez*, 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). Therefore, we here consider whether the six-year fixed portion of Downing's sentence is excessive.

The district court here took into account the objectives of sentencing and considered aggravating and mitigating factors in accordance with I.C. § 19–2521. In mitigation the district court considered the fact that this was Downing's first felony conviction and that he had the support of family members, friends and former employers. Other factors that the sentencing court had to consider, however, included the age of the victim at the time of the abuse, and testimony that the conduct for which Downing had been convicted was the culmination of a series of sexual molestations of E.D. by Downing. E.D. testified that, for an extended period before the charged offense, Downing had been entering her bedroom in the mornings and touching her chest and genital areas. The district court concluded that the apparent inability of Downing and other members of E.D.'s family to understand that Downing's conduct was wrong required that the court fashion a sentence which would protect the victim. The trial court appropriately emphasized Downing's failure to accept responsibility, acknowledge the wrongfulness of his conduct or express remorse. Although Downing admitted that he had penetrated E.D.'s vagina with his finger, and a medical examination confirmed

that there had been sexual molestation by penetration, Downing persisted in maintaining that he had done nothing wrong. He portrayed himself as a victim and placed blame for the sexual contact on his young daughter.

This record does not demonstrate that the sentence is excessive under any reasonable review of the facts. Our conclusion, therefore, is that the district court acted within the permissible bounds of its discretion.

The judgment of conviction and sentence are affirmed.

WALTERS, C.J., and PERRY, J., concur.