**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38023**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Unpublished Opinion No. 427** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: March 30, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **WILLIAM JOHN LESTER,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Patrick H. Owen, District Judge.

Judgment of conviction for lewd conduct with a minor under sixteen years of age, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

William J. Lester appeals from his judgment of conviction entered upon a jury verdict finding him guilty of lewd conduct with a minor under sixteen years of age. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In 2008, K.A.M., who was approximately eight years old at the time, spent every other weekend with her mother, who lived with her boyfriend, William Lester. One day while K.A.M. and her younger sister were home alone with Lester, Lester took K.A.M. to his bedroom, blind-folded her, and directed her to perform various sexual acts on him.

K.A.M. first reported the incident in August of 2009, when she told her older sister what had occurred. After K.A.M. was interviewed by CARES (Children at Risk Evaluation Services), Ada County Sheriff's Detective Cherie Tucker contacted Lester, telling him his name had "come

1

up" in an investigation and she needed to speak with him. Lester voluntarily went to the Sheriff's Department where Detective Tucker told him he was free to leave and did not have to answer any questions. Lester agreed to be interviewed and consistently denied the specific allegations made by K.A.M.

Lester was charged with two counts of lewd conduct with a minor under sixteen years of age, Idaho Code § 18-1508, one count for contact he had with K.A.M.'s younger sister and one count for the contact that occurred with K.A.M. During the initial jury trial, K.A.M.'s younger sister proved unable to competently testify and a mistrial was declared. After a second trial on only the charge pertaining to K.A.M., a jury found Lester guilty. Lester now appeals.

## II.

## ANALYSIS

### A.      Confrontation

Lester contends the district court erred by not allowing him to recross-examine K.A.M. after the State opened a "new" line of questioning on redirect examination concerning K.A.M.'s credibility. Specifically, the State, for the first time on re-direct examination, asked K.A.M. questions regarding whether she was telling the truth because she believed all adults would be able to discern if she was lying. Lester argues that not allowing him to recross-examine K.A.M. on this issue deprived him of his constitutional right to confront and cross-examine the State's witness.

The questioning to which Lester refers occurred at the end of the State's redirect examination of K.A.M. where the prosecutor asked her a series of questions as follows:

[Prosecutor]:  Okay.  You know, [defense counsel] earlier on asked you what you thought could happen if a person--if you lied, for instance, in the courtroom.
             Do you remember that--those questions?
[K.A.M.]:     Yes.
[Prosecutor]:  Now, when he asked you, do you think that the Judge could put you in jail [if you lied], you shrugged your shoulders. Did I get that right?  Did you go like this--
[K.A.M.]:     Yes.
. . . .
[Prosecutor]:  Okay.  And so is it possible--in your brain, do you think it's possible for a person to go to jail if they lie in court?
[K.A.M.]:     Yes.
[Prosecutor]:  Okay.  You're just not sure whether [the judge] would do that to you?

2

[K.A.M.]:       Yes.
[Prosecutor]:   Okay.
[K.A.M.]:       But I know I would be in big trouble.
[Prosecutor]:   Okay.  Do you think that grownups can tell when a kid is lying?
[K.A.M.]:       Yes.
[Prosecutor]:   Do you think these grownups can tell if . . . you're lying?
[K.A.M.]:       Yes.
[Prosecutor]:   Do you think [the judge] can tell if you're lying?
[K.A.M.]:       Yes.

After the State concluded its redirect examination, defense counsel, while acknowledging the judge's general policy not to allow recross-examination, asked if he could recross-examine K.A.M.  The district court denied the request, stating the request was against its general policy and that defense counsel had a "full opportunity to cross-examine."  Defense counsel then made an offer of proof, stating he "would have asked the child if she had ever told a lie before."  Defense counsel explained he had been allowed to ask the question during the first trial and the prosecutor's "redirect, talking about what would happen if [K.A.M.] told a lie in court, reintroduced the question of her telling a lie."  The district court again denied Lester the opportunity to conduct recross-examination, noting counsel could have asked K.A.M. the proposed question on cross-examination.

The control of cross-examination is committed to the sound discretion of the trial judge. *State v. Rauch*, 144 Idaho 682, 685, 168 P.3d 1029, 1032 (Ct. App. 2007).  Thus, trial courts retain wide latitude to impose limits on cross-examination that is harassing, confusing, repetitive, or only marginally relevant.  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *State v. Downing,* 128 Idaho 149, 153, 911 P.2d 145, 149 (Ct. App. 1996).  However, the Sixth Amendment of the United States Constitution guarantees the right of every criminal defendant to be confronted with the witnesses against him, and the primary right that is secured under this provision is the right of cross-examination.  *See Davis v. Alaska*, 415 U.S. 308, 315 (1974).  Specifically, in regard to recross-examination, when new evidence is admitted on redirect examination, the opposing party must be given the right of recross-examination on the new material.  *State v. Miles*, 97 Idaho 396, 399, 545 P.2d 484, 487 (1976), *overruled on other grounds by State v. Bottelson*, 102 Idaho 90, 92, 625 P.2d 1093, 1097 (1981).  However, it should be noted that although a criminal defendant's constitutional right of confrontation includes the opportunity to mount a vigorous attack upon the credibility of witnesses against

him, the right to confront adverse witnesses is not absolute. *Downing*, 128 Idaho at 152, 911 P.2d at 148. The Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)*; see also Downing*, 128 Idaho at 152-53, 911 P.2d at 148-49.

Here, Lester asserts the prosecutor engaged in an "entirely new line of questioning . . . opened up by the State solely during re-direct examination." As the State points out, however, Lester himself engaged in a very similar line of questioning during his cross-examination of K.A.M., as follows:

| [Defense counsel]: | . . . What do you think would happen to you if you didn't tell us the truth? |
|---|---|
| [K.A.M.]: | I would get in very big trouble. |
| [Defense counsel]: | And what kind of trouble would that be? |
| [K.A.M.]: | Big, big trouble. |
| [Defense counsel]: | What does that mean to you? |
| [K.A.M.]: | I would be gone for a long time from my dad, and I would get in trouble from the Judge. |
| [Defense counsel]: | What do you think the Judge would do to you? |
| [K.A.M.]: | I don't know. |
| [Defense counsel]: | Do you think he'd put you in jail? |
| [K.A.M.]: | I don't know. |
| . . . . | |
| [Defense counsel]: | . . . There's no real way for the Judge to know whether you're telling the truth or not, is there? |
| [K.A.M.]: | I don't know. |
| [Defense counsel]: | Because he . . . wasn't there in parts of your life that you would be telling him about, right? |
| [K.A.M.]: | Yes. |

After an examination of the record, we conclude there was no "new" evidence elicited by the prosecutor such that Lester was entitled to recross-examination. During cross-examination, it was Lester who first asked K.A.M. whether the trial judge could tell whether she was lying or not. And while the prosecutor somewhat expanded the scope of the question to also inquire whether K.A.M. believed grown-ups in general could tell whether she was lying, the difference was not substantively significant, as the general thrust of the questioning was the same. It was Lester himself who initially explored this general area of credibility, which the prosecutor then *revisited* in her redirect examination. Accordingly, the trial court was within its discretion to limit recross-examination in this instance and did not err in doing so.

4

**B.     Prosecutorial Misconduct**

Lester also contends the prosecutor improperly commented on his pre-arrest, pre-*Miranda*[1] silence in closing arguments and the district court erred in overruling his contemporaneous objection to said comment.  On appeal, he argues the comment comprised reversible error.

Although our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair.  *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007) (quoting *State v. Estes*, 111 Idaho 423, 427-28, 725 P.2d 128, 132-33 (1986)).  However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial.  *Id.*  A fair trial is not necessarily a perfect trial.  *Id.*  When there has been a contemporaneous objection we determine factually if there was prosecutorial misconduct, then we determine whether the error was harmless.  *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010).  A conviction will not be set aside for small errors or defects that have little, if any, likelihood of having changed the results of the trial.  *State v. Pecor*, 132 Idaho 359, 367-68, 972 P.2d 737, 745-46 (Ct. App. 1998).  Thus, where the defendant meets his initial burden of showing that a violation occurred, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict.  *Perry,* 150 Idaho at 227, 245 P.3d at 979.

We turn first to the question of whether misconduct occurred.  The Fifth Amendment of the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ."  Therefore, a prosecutor may not introduce evidence of the defendant's pre-arrest silence during a "custodial interrogation" or post-arrest silence for the purpose of inferring admission of guilt.  *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966); *State v. Hodges*, 105 Idaho 588, 591, 671 P.2d 1051, 1054 (1983); *State v. McMurry*, 143 Idaho 312, 314, 143 P.3d 400, 402 (Ct. App. 2006).  In other words, a defendant's decision to exercise his or her right to remain silent either before or after his or her arrest cannot later be used in the State's case-in-chief for the purpose of inferring guilt.  *State v. Moore*, 131

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

Idaho 814, 820, 965 P.2d 174, 180 (1998); *State v. Lopez*, 141 Idaho 575, 577, 114 P.3d 133, 135 (Ct. App. 2005).

The statement at issue occurred during the prosecutor's closing argument, where she stated:

> Ladies and gentlemen, I told you at the beginning of this case that you would know that the defendant sexually molested [K.A.M.] and that he did that while . . . she was having these short visits with her mom; and that you would know that because of what you hear from her. *Not because [Lester] ran out and felt guilty and told anybody about it and then wanted to be found out. In fact, it was quite the opposite.*

(Emphasis added.) Lester immediately objected, stating: "It seems as though she's making an inference on the presumption of innocence and the burden of--the right to remain silent when she makes statements that he didn't run out and confess to this." While noting it understood the basis, the district court quickly overruled the objection.

On appeal, Lester contends this statement was a direct comment on his pre-arrest, pre-*Miranda* silence by arguing to the jury that Lester's failure to initiate contact with police was proof he was attempting to hide his guilt. The State counters, however, this was not a comment on Lester's *silence*, but was referencing his *statements* to Detective Tucker during a voluntary interview, wherein Lester repeatedly denied K.A.M.'s allegations. In other words, the State argues the prosecutor was merely stating that Lester had *verbally* denied any wrongdoing when the investigation commenced.

As the State points out, the uncontradicted testimony at trial indicated that when confronted by the allegations by Detective Tucker, Lester verbally denied them. Read in context, the statement at issue does not assert differently. Thus, this case is immediately distinguishable from the litany of cases where Idaho appellate courts have found prosecutorial misconduct when prosecutors have commented on defendants' silence when confronted with allegations and/or evidence. *See e.g., State v. Strouse*, 133 Idaho 709, 713, 992 P.2d 158, 162 (1999) (holding prosecutor's use of defendant's post-*Miranda* silence, in case where defendant was claiming self-defense, was improper where the prosecutor used defendant's failure to tell police his version of the story or to reveal the location of the weapon to imply guilt); *Lopez*, 141 Idaho at 578, 114 P.3d at 137 (finding improper use at trial of defendant's silence *after* being confronted by police about the crime). However inartfully crafted, we conclude the prosecutor's

6

statement in this instance did not implicate Lester's right to remain silent. Given the context of the statement, the most logical interpretation is that the prosecutor was merely reiterating to the jury that the only testimony pointing to Lester's culpability would be K.A.M.'s because Lester had not admitted guilt, and in fact, he had done the "opposite" by *denying* his guilt. In other words, the prosecutor was simply telling the jury this was a classic "he said, she said" case. This does not comprise an improper comment on Lester's silence--rather, it merely reiterates his denial of the charges, and in fact, if anything, was helpful to Lester.

The interpretation of the statement argued by Lester's counsel at trial--that it was a comment on Lester's failure to confess his actions to police after the alleged incident occurred--does not make sense in this context. Lester's defense at trial was that the conduct did not occur--thus, his failure to feel "guilty" and confess after the incident is merely an extension of this defense. In other words, the prosecution could not have logically used his failure to confess as an inference of guilt in this case because if, as Lester contends, the incident did not occur, there would be no reason for him to have "ran out and felt guilty and told anybody about it and then wanted to be found out." *See Miranda*, 384 U.S. at 467-68 (disallowing prosecutorial use of evidence of a defendant's silence *for the purpose of inferring admission of guilt*). To interpret the statement as Lester argues would have us read it in the most negative, and indeed illogical, connotation possible. As we stated in *State v. Eldred*, 148 Idaho 317, 321, 222 P.3d 1011, 1015 (Ct. App. 2009), the United States Supreme Court has held:

> Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence . . . like all closing arguments of counsel, are seldom carefully constructed in *toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court *should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations*.

*Id*. (emphasis added) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47 (1974)). Accordingly, we conclude the prosecutor's statement did not constitute misconduct in this instance.[2]

---

[2]    Lester also contends the cumulative error doctrine requires reversal. However, because Lester has failed to demonstrate there are multiple errors to cumulate, the cumulative error

7

## III.

## CONCLUSION

The district court did not err in limiting recross-examination where no new evidence was introduced on redirect examination such that Lester's right to confrontation was infringed upon. Nor did the prosecutor commit misconduct in her closing argument by impermissibly commenting on Lester's silence. Accordingly, Lester's judgment of conviction entered upon a jury verdict finding him guilty of lewd conduct with a minor under sixteen years of age is affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**

---

doctrine does not apply. *State v. Norton*, 151 Idaho 176, 194-95, 254 P.3d 77, 95-96 (Ct. App. 2011).